not build his second or third kiln on precisely the same square feet of ground as the first; or if he builds and burns two kilns at a time, even though the clay for each may have been taken from a different pit or excavation.

The division of the salt field appears to be wholly artificial. From the agreed statement of facts, it appears not unlike a division of ground in or near a city into city lots. A trade or business may be carried on upon one or many of such lots; and, in either case, may be a single business, and be carried on at one place. One manufacturer becomes the owner of one salt block; another, of two. So, in a city, one trader hires or buys for his business a store built upon a single lot; another, for whose larger business such a store is of insufficient dimensions, buys or hires two such stores, and opens communications between them for the purposes of his business. Certainly, the question whether a manufacturer requires more than one license does not depend on the number of boilers or evaporating pans he uses; and it is difficult to see how the question can depend upon the number of flues or chimneys which carry away the smoke of his fires.

It is difficult to say that reasoning makes the subject any clearer; and it may be difficult to employ language which will certainly define, in all cases, one manufactory distinguished from two. But, the mere fact that the manufacturer of salt includes in his business more than one set of boilers, or more than one chimney, does not, satisfactorily to my mind, determine that he is a manufacturer at two places, within the proper meaning of the act. He manufactures on a larger scale than his neighbor. His license fee will form a less percentage of his expenses, and, to that extent, give him an advantage over his neighbor. But it is, in that view, a very slight difference; and this difference must exist under any definition of the meaning of "place," for, one manufacturer, with a large factory and with large capital, will produce more than his neighbor in his smaller shop or factory. Congress did all that it deemed necessary in view of this difference, by providing, in its definition of a manufacturer, that, unless one produced goods, &c., of a value exceeding one thousand dollars annually, he should not be deemed a manufacturer within the act, nor be charged with any license fee.

My conviction is, that, upon the agreed statement of facts, which merely shows that some of the parties, in their manufacture of salt, use two sets of boilers and one chimney, and some use two or more sets of boilers and as many chimneys, and that these are called blocks and double blocks, they were not chargeable with more than one license fee.

The plaintiff should, therefore, have judgment for the excess paid according to this view. The amount may be ascertained by a reference, or otherwise, as no doubt the parties will agree before the entry of final judgment.

SALTER (BURTON v.). See Case No. 2,218.

SALTER (SAMPAYO v.). See Case No. 12,-277.

## Case No. 12,270.

### SALT MANUF'G CO. v. THOMAS.

[The case reported under above title in 3 Leg. Gaz. 316, and 1 Leg. Gaz. Rep. 275, is the same as Case No. 10,956.]

## Case No. 12,271.

### SALTONSTALL et ux. v. STOCKTON et al.

[Taney, 11.] [1]

Circuit Court, D. Maryland. Nov. Term, 1838. [2]

CARRIERS—INJURY TO PASSENGERS—STAGE-COACH —MISCONDUCT OF DRIVER—EX DELICTO— PROVINCE OF JURY.

1. Where plaintiff sued the proprietors of a line of stage-coaches for damages sustained by his wife, through the upsetting of one of their coaches: *held*, that the plaintiff having proved that the carriage was upset and his wife injured, it was then incumbent on the defendants to show that proper skill and care were exercised on their part, and that the injury was not produced by the negligence of their driver.

2. Every one that undertakes the business of a carrier of persons is bound to know all the hazards to which it is exposed, and that by the exercise of reasonable skill and proper care, the traveller can be carried in safety; when, therefore, a passenger is injured, the presumption is that it has been occasioned by negligence.

3. Justice, as well as the principles of evidence adopted in analogous cases, require, that any disaster by which a passenger suffers, should be prima facie evidence of negligence in the carrier, and make it necessary for him, in order to exonerate himself from damages, to show the contrary.

4. Questions as to negligence, and reasonable skill and care, in every description of business, are necessarily questions of fact, and belong to the jury; the court can do nothing more than give the rule by which they are to be tried.

5. Where the plaintiff imputes the accident to the misconduct of the driver, it is incumbent upon the defendant to prove that the driver possessed and exercised that degree of skill which competent drivers, employed in like business, usually possess, and ought to possess, in order to convey the passenger with safety and comfort, and that he exercised, at the time of the accident, the utmost prudence and caution.

6. The law requires of him a high degree of caution and prudence, and the least negligence on his part, which produces bodily injury to the passenger, will render the carrier liable. Unless the jury find that such skill and such care were used, the plaintiff is entitled to recover; provided, nothing was done by the plaintiff or his wife, which absolves the defendant from this liability.

7. Injuries received in cases of this description are not violations of a contract between the parties, but are breaches of the duty imposed by law on the carrier. They are torts. But the plaintiff may waive the tort and sue in assumpsit.

[Cited in Pouilin v. Canadian Pac. Ry. Co., 47 Fed. 860.]

[1] [Reported by James Mason Campbell, Esq., and here reprinted by permission.]
[2] [Affirmed in 13 Pet. (38 U. S.) 181.]